STEVEN A. GROODE, Bar No. 210500
sgroode@littler.com
LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard, Suite 600
Walnut Creek, California 94597
Telephone: 925.932.2468
Facsimile: 925.946.9809

ALEXANDRIA RAFIZADEH, Bar No. 273494
awitte-rafizadeh@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, California 90067.3107
Telephone: 310.553.0308
Facsimile: 800.715.1330

Attorneys for Defendant
IMPERFECT FOODS, INC. AND MISFITS MARKET, INC.[1]

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PHILLIP JAMES BROWN, JR., on behalf of himself and others similarly situated,

Plaintiff,

v.

IMPERFECT FOODS, INC., a Delaware Corporation; IMPERFECT FOODS, an entity of unknown form; MISFITS MARKET, an entity of unknown form; and DOES 1 through 50, inclusive,

Defendants.

Case No. 5:25-cv-10416

*[Removed from Superior Court County of Santa Clara Case No. 25CV478839]*

**DEFENDANT IMPERFECT FOODS, INC.'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION**

[1] Misfits Market, Inc. is a Delaware company erroneously sued as a d/b/a.

**TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF PHILLIP JAMES BROWN, JR. AND HIS ATTORNEY OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446, Defendant Imperfect Foods, Inc. ("Defendant") hereby removes the above-captioned action from the Superior Court for the State of California, in and for the County of Santa Clara to the United States District Court, Northern District of California. Removal jurisdiction is based on 28 U.S.C. § 1331 (federal question) where Plaintiff's claims substantially depend upon the interpretation of a collective bargaining agreement ("CBA") and are preempted under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, et seq. This action is removed pursuant to the procedures found in 28 U.S.C. §§ 1441 and 1446.

## I. STATEMENT OF JURISDICTION

1. This Court has jurisdiction because a federal question exists under Section 301 of the Labor Management Relations Act ("LMRA"), which provides: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this [Act], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a) (hereinafter, "Section 301").

2. Section 301preemption and jurisdiction apply because the Complaint includes claims that can only be brought as contractual claims under a CBA, because of the application of express CBA exemptions in the California Labor Code. Section 301 also applies because Plaintiff asserts that he is entitled to relief that is controlled by the CBA and makes claims that require interpretation of the CBA to resolve.

3. If not all claims in the Complaint are preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

form part of the same case or controversy.

## II. PLEADINGS, PROCESS, AND ORDERS

4. On October 28, 2025, Plaintiff Phillip James Brown, Jr. ("Plaintiff") filed a Class Action Complaint against Defendant in the Superior Court for the State of California, County of Santa Clara, captioned: *PHILLIP JAMES BROWN, JR., individually on behalf of himself and others similarly situated v. IMPERFECT FOODS, INC., a Delaware Corporation; IMPERFECT FOODS, an entity of unknown form; MISFITS MARKET, an entity of unknown form; and DOES 1 to 50, inclusive*, County of Santa Clara Case Number 25CV478839 (hereinafter "Complaint"). Declaration of Alexandria Rafizadeh in Support of Defendant's Notice to Federal Court of Removal of Civil Action from State Court ("Rafizadeh Decl.") ¶¶ 2-3, Exhibit ("Ex.") 1, Complaint.

5. Plaintiff's Complaint asserts the following eight causes of action: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Wages and Overtime under Labor Code § 510; (3) Meal Period Liability Under Labor Code § 226.7; (4) Rest-Break Liability Under Labor Code § 226.7; (5) Violation of Labor Code § 226(a); (6) Failure to Keep Required Payroll Records Under Labor Code §§ 1174 and 1174.5; (7) Penalties Pursuant to Labor Code § 203; and (8) Violation of Business & Professions Code § 17200, et. seq. Rafizadeh Decl. ¶ 3, Ex. 1, Compl. ¶¶ 36–85. The Superior Court of the State of California, County of San Clara's docket for this matter also indicates that, on October 28, 2025, Plaintiff filed a Civil Case Cover Sheet and Summons. A true and correct copy of the Complaint, Civil Case Cover Sheet, and Summons are attached as Exhibit 1 to the Rafizadeh Declaration filed concurrently herewith. Rafizadeh Decl. ¶ 3, Ex. 1.

6. The Superior Court of the State of California, County of Santa Clara's docket for this matter specifies that, on November 19, 2025, the Santa Clara County Superior Court issued an order declaring the matter as complex. A true and correct copy of the Order Deeming Case Complex is attached to the Rafizadeh Declaration as Exhibit 2. Rafizadeh Decl. ¶ 4, Ex. 2.

7. Plaintiff filed his Proof of Service demonstrating he served Defendant

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

Imperfect Foods, Inc. with the Summons, Complaint, and Civil Case Cover Sheet on November 4, 2025, via substituted service. Rafizadeh Decl. ¶ 5, Ex. 3. The Summons and Complaint was served upon an individual named Nohely Mejia, Human Resources Coordinator, at 351 Cheryl Ln, Walnut, CA 91789. *Id.* Under Cal. Civ. P. § 416.10(b), this individual is not authorized by Imperfect Foods to receive service of process and the Walnut, California location is not the principal office of the corporation; however, for purposes of this Notice of Removal, Defendant considers November 4, 2025, to be the earliest possible date of service. Rafizadeh Decl. ¶ 5. A true and correct copy of the November 7, 2025, Proof of Service is attached to the Rafizadeh Decl. as Exhibit 3. Rafizadeh Decl. ¶ 5, Ex. 3.

8. Plaintiff also filed another Proof of Service with the Court on November 12, 2025, purporting he served Defendant Imperfect Foods, Inc. with the Complaint on November 10, 2025, via substituted service. Rafizadeh Decl. ¶ 6, Ex. 4. The November 12, 2025, Proof of Service states the individual who was served is Michelle Peter, Human Resources Manager. *Id.* Similarly, this individual is not authorized by Imperfect Foods to receive service of process. Rafizadeh Decl. ¶ 6. A true and correct copy of the November 12, 2025 Proof of Service is attached to the Rafizadeh Declaration as Exhibit 4. Rafizadeh Decl. ¶ 6, Ex. 4.

9. On November 25, 2025, Plaintiff filed a Proof of Service indicating service on an entity called "Misfits Market" on November 19, 2025, via substituted service. The Proof of Service indicated that the Complaint was served on a "John Doe" who was a "driver/person in charge" allegedly at the address 1772 Rogers Ave, San Jose, California 95112. A true and correct copy of the November 25, 2025, Proof of Service is attached to the Rafizadeh Decl. as Exhibit 5. Rafizadeh Decl. ¶ 7, Ex. 5. Service upon an unnamed "driver/person in charge" in California is not proper service on behalf of an out-of-state corporate entity, and so accordingly, Defendant Misfits Market, Inc. has not been served due process in this case. *Id.*

10. On December 3, 2025, Defendant submitted for filing an Answer to Plaintiff's

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

Complaint. A true and correct copy of Defendant's Answer with proof of submittal for filing is attached to the Rafizadeh Declaration as Exhibit 6. Rafizadeh Decl. ¶ 8, Ex. 6.

11. Pursuant to 28 U.S.C. § 1446(d), Exhibits 1 through 5 accompanying the Rafizadeh Declaration constitute all process, pleadings, and orders filed and/or served on Defendant or filed or received by Defendant in this action. Rafizadeh Decl. ¶ 9. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in the Superior Court of the State of California, County of Santa Clara, or served by any party. *Id.*

## III. VENUE

12. This action was originally filed in the Superior Court for the State of California, County of Santa Clara. Venue properly lies in the United States District Court for the Northern District of California, pursuant to 28 U.S.C. Sections 84(c)(1), 1391, and 1441, and 1446.

## IV. TIMELINESS OF REMOVAL

13. An action may be removed from state court by filing a notice of removal, together with a copy of all process, pleadings, and orders served on the Defendant within 30 days of service on defendant of the initial pleading. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Mitchetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (the 30-day removal period runs from the service of the summons and complaint). Plaintiff's November 7, 2025 Proof of Service represents that Defendant Imperfect Foods was served via substituted service on November 4, 2025. Rafizadeh Decl., ¶ 5, Ex. 3. Because the earliest possible date of service is allegedly on November 4, 2025, the thirty-day period for removal runs through December 4, 2025. 28 U.S.C. § 1446(b); Rafizadeh Decl. ¶ 5, Ex. 3. Accordingly, Removal of this action is timely because this Notice of Removal was filed within 30 days after the earliest possible date the original Complaint was served on at least on party defendant. *Id.*

## V. NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

14. Contemporaneous with the filing of this Notice of Removal in the United

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

States District Court for Northern District of California, Defendant's counsel is providing written notice of such filing to Plaintiff's counsel of record: Roman Shkodnik and Mason Doidge of D. Law, Inc., 450 North Brand Boulevard, Suite 840, Glendale, CA 91203. Rafizadeh Decl. ¶ 9. In addition, a copy of Defendant's Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of Santa Clara. *Id.*

## VI. FEDERAL QUESTION JURISDICTION

### A. Section 301 Preemption Principles

15. This Court has jurisdiction because a federal question exists under Section 301 of the Labor Management Relations Act ("LMRA"), which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this [Act], or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (hereinafter, "Section 301").

16. Section 301 preemption and jurisdiction apply because the Complaint includes claims that can only be brought as contractual claims under a CBA due to express CBA exemptions in the California Labor Code. Section 301 also applies because Plaintiff asserts he is entitled to relief that is controlled by the CBA and makes claims that require interpretation of the CBA to resolve. If any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c), because this Court has supplemental jurisdiction under 28 U.S.C. § 1367. All claims in the Complaint are sufficiently related to form part of the same case or controversy.

17. Section 301 preemption furthers two important federal policies. First, it ensures that the interpretation of CBAs remains uniform and independent of state law. *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962) (inconsistent interpretations

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

would "inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements"). Second, the complete preemption doctrine gives effect to the parties' mutual promise to resolve disputes through the grievance-arbitration process and furthers the strong federal policy that labor disputes "remain[] firmly in the arbitral realm." *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 411 (1988). This Court has subject matter jurisdiction over – and thus Defendant may properly remove – any ostensible state law claim preempted by Section 301. *Franchise Tax Bd. v. Constr. Laborers*, 463 U.S. 1, 24 (1983); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985) (if preempted, the "claim must either be treated as a § 301 claim . . . or dismissed"). The steps for a Section 301 preemption analysis are outlined in *Curtis v. Irwin Industries, Inc.,* 913 F.3d 1146, 1152 (9th Cir. 2019), as follows.

18. <u>*Curtis* Step One</u>: Under the Section 301 preemption analysis, courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA." *Id.* at 1152 (internal citations and quotations omitted). Under *Curtis*, where an asserted Labor Code or Wage Order claim is covered by an available CBA exemption – such that there exists no valid underlying state law claim – the Section 301 preemption inquiry is resolved at this first step. This is because, in the case of a state law meal break claim (for example), if Labor Code Section 512(a) does not apply (due to the application of the Labor Code Section 512(e)-(g) CBA exemption), any pleaded meal break claim is necessarily a contractual claim. *See, e.g.*, *Giles v. Canus Corp.*, No. 3:2022cv03097, 2022 WL 3370793, *4–5 (N.D. Cal. Aug. 16, 2022) (applying *Curtis*).

19. <u>*Curtis* Step Two</u>: Similarly, Section 301 preemption applies whenever a necessary predicate for a plaintiff's claim is an alleged violation of the CBA, because such a claim cannot be resolved without interpreting and applying the CBA and/or such claim involves a contractual right (a right that exists because of the CBA). *De'Sart v. PG&E*, No. 2:2018cv03515, 2018 WL 3545927, at *3 (C.D. Cal. Jul. 18, 2018; *Kroeger v. L3 Techs., Inc.*, No. 217CV08489JFWAGR, 2018 WL 1357363, at *4 (C.D. Cal. Mar. 15, 2018); *Moreau v. San Diego Transit Corp.*, 210 Cal. App. 3d 614, 624–25 (1989); *see Curtis*, 913

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

F.3d at 1152.

20. If, and only if, there is no preemption found at the first step of the analysis, do courts proceed to the second step of the Section 301 preemption analysis, which asks "whether a plaintiff's state law right is substantially dependent on analysis of the CBA." *Curtis*, 913 F.3d at 1153. Under this second step, Section 301 preemption still applies if the resolution of (for example) if the resolution of a Plaintiffs' minimum wage claim (for example) requires interpretation of the CBA. *See Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007, 1014–16 (C.D. Cal. 2022) (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks through Article 27"); *Giles*, 2022 WL 3370793, at *6 (holding minimum wage claim preempted because resolving that claim would require an interpretation of terms "actual time worked" and "show-up pay" as used in the CBA).

**B. The Parties, the Union, and the Relevant Collective Bargaining Agreement.**

21. Defendant is a company engaged in an industry affecting commerce within the meaning of the National Labor Relations Act (the "NLRA"). 29 U.S.C. §§ 152(2), (6), (7), and 185(a). The United Food and Commercial Workers, Local 5 (the "Union") is a labor organization under the NLRA and LMRA. 29 U.S.C. §§ 152(5) and 185(a). Defendant and the Union, at all relevant times, have been parties to a collective bargaining agreement entitled the UFCW Collective Bargaining Agreement ("CBA"). *See* Declaration of Lonniece Senior in Support of Defendant's Removal ("Senior Decl.") ¶ 5, Ex. A, CBA.

22. At all relevant times at issue in the above-captioned lawsuit, the terms and conditions of employment for Delivery Drivers, including Plaintiff, assigned to work at a location within the defined geographical jurisdiction were governed by the CBA with the Union. Senior Decl. ¶¶ 4-5.

23. Plaintiff was employed by Defendant from approximately January 6, 2024 to March 24, 2025 as a Delivery Driver, and throughout his employment was governed by the

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

CBA with the Union. Senior Decl., ¶ 4.

**C. Plaintiff's Failure to Reference The CBA, the LMRA, or the Union Does Not Preclude Removal.**

24. The failure of Plaintiff's Complaint to reference the CBA, the Union, or the LMRA is not relevant to the Section 301 preemption analysis. *Curtis*, 913 F.3d at 1152; *Mellon*, 625 F. Supp. 3d at 1012–13; *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 750 (S.D. Cal. 2021); *Ayon v. Zero Waste Sols., Inc*, No. 220CV02424MCEJDP, 2021 WL 4065716, at *3 (E.D. Cal. Sept. 7, 2021).

25. A plaintiff may not be permitted to "artfully plead" a complaint to conceal its true nature. *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) (holding that plaintiff's state law claim was preempted even though operative complaint made no mention of a collective bargaining agreement); *see IBEW v. Hechler*, 481 U.S. 851 (1987) (state law tort action "treated as Section 301 claim" by the Court); *Hyles v. Mensing*, 849 F.2d 1213, 1217 (9th Cir. 1988) (preemption affirmed notwithstanding plaintiff's artful omission of references to preemptive federal law); *Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472–74 (9th Cir. 1984) (preemption affirmed despite attempt to plead around federal jurisdiction); *Schroeder v. Trans World Airlines, Inc.*, 702 F.2d 189, 191 (9th Cir. 1983), *overruled in part on other grounds* in *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241 (9th Cir. 2009); *see also Milne Emp. Ass'n v. Sun Carriers, Inc.*, 960 F.2d 1401, 1406 (9th Cir. 1991).

26. The Court may properly look beyond the face of the Complaint to determine whether the claims asserted are in fact preempted by Section 301. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003). Additionally, the Court may properly look to the facts stated in the Notice of Removal "to clarify the action a plaintiff presents and to determine if it encompasses an action within federal jurisdiction." *Schroeder*, 702 F.2d at 191.

27. An artfully pled state law claim is properly "recharacterized" as a federal claim under the "complete preemption" doctrine, which provides that the preemptive force

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

of Section 301 "converts an ordinary state law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule" and is removable to federal court. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). "A claim pleaded under state law that requires the interpretation of a collective bargaining agreement is transformed by section 301 of the LMRA into a claim arising under federal law." *Risetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996).

## VII. RELEVANT CBA PROVISIONS

28. The current CBA has been in effect since July 2, 2023 and continues through January 1, 2026. Senior Decl. ¶ 5, Ex. A. Excerpts from the provisions of the CBA relevant to this Removal include the following:

### a. Wage Rates

29. **Appendix A, Wages,** includes Appendices A.1 through A.3 with the minimum and maximum straight-time base rate of pay for all Delivery Drivers by classification and step. Plaintiff was a Delivery Driver paid an average base rate of $21.51 per hour. Senior Decl. ¶ 4, Ex. A, at 25–29.

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

### b. Hours of Work and Overtime

**Section 4. Seniority. Section 4.3. Weekly Guarantee:**

It is the intent of this agreement that the Employer utilize full-time drivers. All drivers under the following classification shall be guaranteed the following hours:

Full-Time: Any driver classified as "full-time" shall be guaranteed a minimum average of thirty-six (36) work per week scheduled during a four (4) week period. For the avoidance of doubt, this does not mean a full-time driver will be guaranteed thirty-six (36) hours each week but rather will be scheduled for an average workweek of thirty-six (36) hours and will only be paid for the actual

> hours worked during each workweek.

Senior Decl. ¶ 6, Ex. A, at 10.

30. In addition, **Section 6. Holidays**[2] provides in pertinent part:

> Employees not scheduled to work on a holiday named in this agreement will be paid eight (8) hours at the employee's straight time rate of pay. If employees are required to work on the holidays listed above, they shall be paid at the rate of one and a half (1.5x) the employee's regular straight-time rate of pay for hours worked, and the employee shall be paid for such holiday. In order to be eligible for holiday pay, it will be necessary for an employee to work the scheduled day/shift before the holiday, and to work the scheduled day/shift after the holiday.

Senior Decl. ¶ 6, Ex. A, at 16.

31. Finally, there are other provisions throughout the CBA setting forth whether an employee would be paid straight-time or otherwise, including that "[e]mployee representatives of the Safety Committee will be compensated for attending the quarterly meeting at their straight-time rate of pay," Senior Decl. ¶ 6, Ex. A, at 12 § 5.1, Safety Committee; that for an employee on jury duty the employer would "pay the difference between the employee's regular straight time daily rate and the amount received by the employee for jury service, provided the employee has completed six (6) months of service with the Employer and is required to report by the jury commissioner and does serve on any jury," but that "[n]o overtime payments are made during the time that an employee serves on a jury," Senior Decl. ¶ 6, Ex. A, at 14 § 5.11.

**c. Meal and Rest Periods**

2 "Holidays" is inadvertently misspelled in the CBA as "Hoildays." *See* Senior Decl. ¶ 6, Ex. A, at 16 § 6.

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

**Section 5. General Provisions. Section 5.11. Meal Period**:

> The Employer will follow all local, state, and federal laws regarding meal periods. The Employer acknowledges and understands that they must ensure to their best of their ability that workers take their legally required meal periods and calculate that into any evaluation of their delivery route. The Employer further understands that the "Meal" periods do not start until the worker has completely stopped working and they cannot be interrupted during this time. The Union acknowledges that the Employer authorizes and permits legally compliant meal periods. The Union further acknowledges that the drivers are free from direct supervisory oversight due to the nature of their job duties during much of their shift and that the employees will take their legally required meal periods. The exclusive remedy for any meal period claims will be binding arbitration under the terms of the applicable grievance/arbitration provision in this Agreement.

Senior Decl. ¶ 6, Ex. A, at 14.

**Section 5. General Provisions. Section 5.12. Rest Period:**

> Employees are authorized and permitted to take a paid, uninterrupted 10- minute rest period for every 4 hours of work or major fraction thereof. An employee who works an 8-hour shift, for example, may take two 10-minute rest periods. If an employee works more than 10 hours; he or she is eligible for a third rest period and a fourth rest period if he or she works more than 14 hours. These periods may

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

not be combined with meal periods or taken at the end of the workday to shorten the workday. The Employer acknowledges and understands that they must ensure to their best of their ability that workers take their legally required rest periods and calculate that into any evaluation of their delivery route. The Employer further understands that the "rest" periods do not start until the worker has completely stopped working and they cannot be interrupted during this time. The Union acknowledges that the Employer authorizes and permits legally compliant rest periods. The Union further acknowledges that the drivers are free from direct supervisory oversight due to the nature of their job duties during much of their shift and that the employees will take their legally required rest periods. The exclusive remedy for any rest period claims will be binding arbitration under the terms of the applicable grievance/arbitration provision in this Agreement.

Senior Decl. ¶ 6, Ex. A, at 14–15.

**d. Payment of Wages**

32. The CBA provides for biweekly pay:

**Section 5. General Provisions. Section 5.7 Pay Day:**

Employees shall be paid on a biweekly basis on Fridays. If scheduled payday falls on a holiday, paychecks will be distributed on the preceding business day. The Employer shall furnish each employee with a biweekly wage statement showing their name, hours of work, overtime if

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

any, total wages paid and list of deductions made.

Senior Decl. ¶ 6, Ex. A, at 13.

**e. Grievance and Arbitration—**

**Section 12. Adjustment and Arbitration of Disputes,** states:

> For this Agreement, a grievance is a dispute, difference of opinion, between the parties, and grievances of employees involving or arising out of the meaning, interpretation, application, or alleged violation of this Agreement, including the arbitrability of all such matters. All grievances as defined are to be processed in accordance with the terms of the section. The parties recognize that it is important that grievances be processed and resolved [as] quickly as possible. The parties will share all factual details regarding a grievance (or pregrievance issue) as early as possible in the dispute resolution process. All disputes that are resolved at the location level shall be considered settled on a non-precedent setting basis, unless otherwise expressly stated in writing. Any other type of grievance must be submitted to the Employer in writing no later than seven (7) business days after the employee has become aware of the occurrence.
>
> Grievances filed by the Union challenging any disciplinary suspension or discharge shall be made as soon as possible but shall only be recognized if submitted to the Employer in writing within ten (10) business days.

Senior Decl. ¶ 6, Ex. A, at 20.

33. The Grievance Resolution Process sets forth two steps to handle disputes



LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

arising from the CBA:

**Section 12. Adjustment and Arbitration of Disputes:**

> Any dispute not settled by the parties within twenty (20) business days following the receipt of such written notice or such extended time as may be agreed upon by both parties, the following options to resolve the grievance will be utilized.

34. The CBA continues with detailed procedural steps for grievance meetings, time limits, and the process for submitting unresolved grievances to arbitration. Senior Decl. ¶ 6, Ex. A, at 20–21.

35. **Section 12, Adjustment and Arbitration of Disputes**, continues with a process for arbitration, including identifying potential arbitrators, the selection process, timing, hearing, expense, and other details. Senior Decl. ¶ 6, Ex. A, at 21–23.

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

## VIII. LEGAL DISCUSSION

36. Plaintiff pleads eight causes of action, all of which involve wage and hour provisions of the California Labor Code, IWC Wage Orders, and Unfair Competition Law ("UCL"). However, Plaintiff's overtime claim is contractual under the CBA. California state law does not apply to such claims because of an express exemption in the Labor Code. Plaintiff's meal period, rest break, and minimum wage claims are preempted because the resolution of those claims also require interpretation of the CBA. Plaintiff's derivative claims (for waiting time penalties under Labor Code section 203, wage statement penalties under Labor Code section 226, recordkeeping under Labor Code sections 1174 and 1174.5, and restitution under the UCL), are preempted under Section 301 because such claims rise or fall based on the underlying substantive (and preempted) overtime, meal break, and rest break claims. In the alternative, the Court has supplemental jurisdiction of these claims because they form part of the same case or controversy as Plaintiff's preempted claims.

### A. Plaintiff's Overtime Claims Are Preempted Under *Curtis* Step One.

37. Plaintiff has no valid state law overtime claim because the Labor Code section

514 exemption applies, which provides an overtime exemption where an employee is "covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514. Here, the CBA provides for wages, hours of work, and working conditions of employees. Senior Decl. ¶ 6, Ex. A, at 10 § 4.3, 12 § 5.1, 14 § 5.11, 16 § 6. Further, the CBA provides base hourly rates of pay for employees that is *well* in excess of the applicable California minimum wage. *Id.* at 25–29 appx. A. Plaintiff was a Delivery Driver paid at an average base rate of $21.51 per hour. Senior Decl. ¶¶ 4-6, Ex. A, at 25–29. This is a "start" step base rate as indicated in Appendix A.2, and thus this is the lowest grade of pay for EBY/NBY/SBY Delivery Drivers. *See id.*, Ex. A, at 27 appx. A-2. The current minimum wage in California is $16.50; 130% of $16.50 is $21.45.

38. Accordingly, the Labor Code section 514 exemption, which has been construed and applied capaciously by state and federal courts, clearly applies here. Where, as here, the section 514 exemption applies to union-represented plaintiffs, the "right to overtime 'exists solely as a result of the CBA,' and therefore is preempted under § 301." *Curtis*, 913 F.3d at 1154; *Radford v. Nexstar Broad., Inc.*, No. 24-CV-08118-RFL, 2025 WL 829601, at *2 (N.D. Cal. Mar. 14, 2025) (overtime claim preempted by LMRA where "the produced CBA governs his employment, and all employees covered under the produced CBA received qualifying terms satisfying Section 514"); *Liu v. Sealy, Inc.*, No. 2:24-CV-05490-MEMF-AS, 2025 WL 1357280, at *5–6 (C.D. Cal. May 9, 2025) ("Plaintiffs' overtime claim is governed by the CBA, not state law, and their claim is preempted by Section 301" where among other things CBA "prescribes regular hourly rates of pay of not less than 30% more than the state minimum wage rates during the claim period"); *Garcia v. Pac. Gas & Elec. Co.*, No. 24-CV-04150-VC, 2024 WL 4209519, at *1 (N.D. Cal. Sept. 17, 2024) (same); *Castaneda v. Ardagh Glass Inc.*, No. 23-CV-03547-HSG, 2024 WL 589088, at *4–5 (N.D. Cal. Feb. 13, 2024) (same); *Lopez v. W. Coast

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

*Arborists, Inc.*, No. 2:23-CV-02734 WBS DB, 2024 WL 382368, at *4 (E.D. Cal. Feb. 1, 2024) (same). *See Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203–04 (C.D. Cal. 2015); *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, No. 2:2021cv09959, 2022 U.S. Dist. LEXIS 42113, at *11 (C.D. Cal. Mar. 8, 2022) (because CBA satisfied the requirements of section 514, "the right to overtime pay exists solely as a result of the CBA").

**B. Plaintiff's Meal and Rest Period Claims Are Preempted Under *Curtis* Step Two.**

39. Plaintiff's meal and rest break claims are preempted under *Curtis* Step Two, because this "state law right is substantially dependent on analysis of the CBA." *See Curtis*, 913 F.3d at 1153. Here, CBA contains provisions for meal and rest periods. (See provisions quoted in Section VII(c), *supra*.) Therefore, resolution of Plaintiff's meal and rest break claims will also require analysis of the CBA given that the CBA specifically provides for and defines meal and rest periods, and there are discrepancies between the Labor Code's requirements for meal and rest breaks and the language of the meal and rest break provisions in the CBA. For example, not only does the CBA limit the remedy for meal and rest break violations to "binding arbitration under the terms of the applicable grievance/arbitration provision in this Agreement," but also the CBA provides that the "employer must <u>ensure to their best of their ability</u> that workers take their legally required meal periods and calculate that into any evaluation of their delivery route." Senior Decl. ¶ 6, Ex. A, at 14 § 5.11. Courts have found meal and rest break claims preempted where the CBA must be interpreted to determine the meaning of terms. *See Marquez v. Toll Global Forwarding (USA), Inc.*, No. 2:18-cv-03054-ODW (ASx), 2018 WL 3218102, at *3–4 (C.D. Cal. June 28, 2018) (granting a motion to dismiss on section 301 preemption grounds where evaluating meal and rest period agreements in a CBA "will require more than merely applying the terms of the CBA. It will require interpretation, and the parties will likely dispute the meaning of these terms."). The past practices of the parties, deemed part of the CBAs, will also factor in this analysis. *See Consol. Rail Corp. v. Ry. Labor Executives'*

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

*Ass'n*, 491 U.S. 299, 307 (1989) (quoting *Transp. Union v. Union Pac. R. Co.*, 385 U.S. 157, 161 (1966) ("[C]ollective bargaining agreements may include implied, as well as express, terms. Furthermore, it is well established that the parties' 'practice, usage and custom' is of significance in interpreting their agreement.").

40. In any event, if the Court finds that any portion of Plaintiff's meal and rest claims are not preempted, the Court has supplemental jurisdiction because any non-preempted claims form part of the same case or controversy as the preempted claims.

**C. Plaintiff's Minimum Wage Claim Is Preempted Under *Curtis* Step Two.**

41. Plaintiff alleges he and class members were not paid minimum wages as required. Rafizadeh Decl. ¶ 3, Ex. 1, Compl. ¶¶ 36–44. This minimum wage claim is preempted under *Curtis* Step Two because interpretation of the various provisions of the CBAs requiring pay for all hours worked is required to resolve the minimum wage claim. *See Rodriguez*, 2022 WL 161892, at *5 (finding, where plaintiff alleged "defendant failed to pay minimum wages for off-the-clock activity," resolution of minimum wage claim required, "[a]t minimum, . . . interpretation of CBA terms such as 'actual hours worked' and 'show up expenses'"); *Giles*, 2022 WL 3370793, at *6 (minimum wage claim preempted because resolving that claim would require interpretation of contractual terms "actual time worked" and "show-up pay"); *Mellon*, 625 F. Supp. 3d at 1014 (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks").

42. In any event, if the Court finds that any portion of Plaintiff's minimum wage claim is not preempted, the Court has supplemental jurisdiction because any non-preempted claims form part of the same case or controversy as the preempted claims. *See Gay v. Pac. Steel Grp.*, No. 20-CV-08442-HSG, 2021 WL 2917095, at *3 (N.D. Cal. June 15, 2021) (finding supplemental jurisdiction for minimum wages, unpaid wages, final wages not timely paid, non-compliant wage statements, failure to keep requisite payroll records, unreimbursed business expenses, and Business and Professions Code section

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

17200 claims when overtime, meal period, and rest period claims were preempted).

**D. Plaintiff's Derivative Claims for Inaccurate, Itemized Wage Statements, Waiting Time Penalties, Recordkeeping, and Unfair Competition Are Preempted Because They Are Derivative of Preempted Claims.**

43. Plaintiff's claims for waiting time penalties under Labor Code Sections 201-203, wage statement penalties under Labor Code Section 226, inaccurate recordkeeping under Labor Code section 1174(d), and unfair business practices claim under Business & Professions Code section 17200, et seq. are all, in whole or in part, derivative of Plaintiff's claims that are preempted under Section 301 for the reasons described above. Rafizadeh Decl. ¶ 3, Ex. 1, Compl. ¶¶ 60–85.

44. All four derivative claims are preempted under Section 301 for this reason. *Castaneda v. Ardagh Glass Inc.*, No. 23-CV-03547-HSG, 2024 WL 589088, at *6 n.4 (N.D. Cal. Feb. 13, 2024) (plaintiff's claims for unfurnished wage statements and section 17200 were preempted since they were derivative of his preempted overtime claim); *Williams v. Securitas Sec. Servs. USA, Inc.*, No. 23-CV-01863-LB, 2023 WL 5310937, at *7 (N.D. Cal. Aug. 16, 2023) ("The derivative claims for failure to provide accurate statements and a violation of the UCL (claims five and six) are preempted because they depend on the preempted claims."); *Giles*, 2022 WL 3370793, at *6 (finding plaintiffs' minimum wage, overtime, and meal period claims were preempted by the LMRA and consequently that his derivative wage statement, waiting time, wrongful termination, and UCL claims were also preempted by the LMRA); *Rodriguez*, 2022 WL 161892, at *6 ("[T]he derivative claims for waiting time penalties, failure to pay final wages in violation of Cal. Labor Code § 203, failure to provide accurate [wage] statements, and the UCL claim . . . depend on the outcome of the other claims. Those underlying claims require analysis and interpretation of the CBA" and are thus preempted).

**E. Supplemental Jurisdiction**

45. To the extent there are certain claims alleging Labor Code violations that do not arise under Section 301 of the LMRA, those alleged violations remain within the

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308

supplemental jurisdiction of the Court under 28 U.S.C. § 1367(a) in that they are so related to the federal cause of action that they form part of the same case or controversy under Article III of the United States Constitution. *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850 (9th Cir. 2004) ("Nonfederal claims are part of the same case as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."). *See Giles*, 2022 WL 3370793, at *7 (finding plaintiff's wage statement claim derivative of his minimum wage, overtime, and meal period preempted claims and thus likewise preempted by the LMRA); *see also Liu*, 2025 WL 1357280, at *6 (holding overtime claim preempted under LMRA and finding supplemental jurisdiction existed over plaintiffs' remaining claims for minimum wage, missed meal and rest periods, failure to indemnify employment expenses, waiting time penalties, and unfurnished wage statements, as those claims "derive from the same common nucleus of operative fact"); *Josephson v. Lamon Constr. Co., Inc.*, No. 2:23-CV-00043-DAD-AC, 2023 WL 9183255, at *5 (E.D. Cal. Dec. 8, 2023) (finding plaintiff's missed meal period claims preempted under LMRA and exercising supplemental jurisdiction over remaining claims of unpaid minimum wages, missed rest periods, unfurnished wage statements, waiting time penalties, failure to reimburse under Labor Code section 2802, and unfair competition under Business and Professions Code section 17200, because remaining claims "arise from the same working conditions and relationship with defendant as plaintiff's [preempted] claims for failure to provide required meal periods"); *Rodriguez v. Sukut Constr., Inc.*, No. 1:22-cv-01181-CDB, 2022 WL 17547526, at *8 (E.D. Cal. Dec. 9, 2022) (exercising supplemental jurisdiction after finding that the plaintiff's overtime and meal break claims were preempted "to avoid needless expense of judicial resources and the potential for inconsistent judgments due to parallel proceedings"); *Blackwell v. Com. Refrigeration Specialists, Inc.*, No. 2:20-cv-01968-KJM-CKD, 2021 WL 2634501, at *5 (E.D. Cal. June 25, 2021) (exercising supplemental jurisdiction over "other wage and hour violations . . . which arise out of the same employment relationship that gave rise to plaintiff's meal period and overtime claims,"

which were found to be preempted). Thus, this action is removable in its entirety under Section 301.

## IX. CONCLUSION

46. For the reasons provided herein, Defendant hereby removes this action from the California Superior Court, in and for the County of Santa Clara, to the United States District Court, Northern District of California. Defendant requests that this Court retain jurisdiction for all further proceedings.

Dated: December 4, 2025

LITTLER MENDELSON, P.C.

*/s/ Steven A. Groode*
Steven A. Groode
Alexandria Rafizadeh

Attorneys for Defendants
IMPERFECT FOODS, INC. and MISFITS MARKET, INC.

4933-0017-5226.1 / 109955.1019

LITTLER MENDELSON, P.C.
2049 Century Park East,
5th Floor
Los Angeles, California 90067.3107
310.553.0308